**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GENOVEVO ALVAREZ-RONQUILLO,

          Petitioner,

v.                                        No. CV 21-962 KG/CG
                                                   (No. CR 19-3240 KG/CG)

UNITED STATES OF AMERICA,

          Respondent.

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

      **THIS MATTER** is before the Court on Petitioner Genovevo Alvarez-Ronquillo's *Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (the "§ 2255 Motion"), (CV Doc. 1), filed September 29, 2021; and Respondent United States of America's *Response to Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255* (the "Response"), (CV Doc. 8), filed January 7, 2022. Although Petitioner requested and was granted a sixty-day extension of time to reply, he has filed no reply in support of the Motion and his time for doing so has passed. *See* (CV Doc. 10 (extending reply deadline to March 22, 2022)).

      United States District Judge Kenneth J. Gonzales referred this case to the undersigned to perform legal analysis and recommend an ultimate disposition. (CV Doc. 5). The Court, having considered the Motion, the Response, the record, and the relevant law, **RECOMMENDS** that Petitioner's Motion be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

**I.    Factual Background**

      This case stems from Petitioner's federal conviction for running guns into Mexico. *See* (CV Doc. 1 at 4-7); *see also* (CR Doc. 87). In March 2019, agents with the Bureau

of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted an investigation into several suspicious firearms purchases Petitioner made at three local establishments. (CR Doc. 1 at 2-5); (CR Doc. 38 at 2). ATF's investigation revealed Petitioner had purchased 49 firearms on twelve separate occasions between June 2018 and March 2019. (CR Doc. 1 at 2-5); (CV Doc. 8 at 6). The investigation also revealed several instances near the dates of the transactions in which Petitioner had crossed the US-Mexico border. (CR Doc. 1 at 2).

On March 22, 2019, ATF Task Force Officer Michael Rickards received a phone call from the owner of MMJ's Pawnshop, one of the local establishments, informing him that Petitioner was currently completing a purchase inside the store. *Id.* at 4. Officer Rickards and ATF Special Agent Nick Dilello drove to MMJ's Pawn Shop, and observed Petitioner loading several firearms into a vehicle in the store's parking lot. *Id.* They approached Petitioner, and with the assistance of a Las Cruces Police Department officer who provided Spanish interpretation, they "asked [Petitioner] to accompany them to [Officer Rickards's] government-assigned vehicle to answer some questions." *Id.* Petitioner agreed. *Id.*

Officer Rickards and Agent Dilello conducted the interview "inside [Officer Rickards's] government-assigned vehicle in the MMJ's Pawn Shop parking lot." *Id.* Officer Rickards and Petitioner sat in the front seats, and Agent Dilello and the Las Cruces police officer sat in the back seats. *Id.* The interview was recorded and a transcription of it produced. *Id.*; *see* (CV Doc. 8-3). At the outset, Officer Rickards told Petitioner he "needed to talk to [Petitioner] about a couple of firearms that [Petitioner] ha[d] purchased." *Id.* at 1. Officer Rickards told Petitioner that he was "not under arrest,"

2

that he was "not being charged with any crimes," and that they were interviewing him "in the car for privacy." *Id.* at 1-2. Petitioner stated he understood. *Id.* at 2.

Later in the interview, Petitioner asked, "[W]hat kinda conditions I . . . I am right now[?]" *Id.* at 19. Officer Rickards explained they were "looking at . . . potential crimes [for] . . . buying firearms and taking them to Mexico[,] . . . [f]or exporting goods," and for falsifying the firearm purchase forms. *Id.* at 19-20. Officer Rickards reiterated that Petitioner was "not under arrest," and that he was "not being charged with anything." *Id.* at 20. By the end of the interview, which lasted approximately thirty minutes, Petitioner had confessed to transporting firearms to Mexico and reselling them. *Id.* at 6-19.

Petitioner left the interview but was arrested at his home later that day. (CR Doc. 1 at 5). He was thereafter charged with one count each of conspiracy to export firearms from the United States in violation of 18 U.S.C. § 371, and attempt to export firearms from the United States in violation of 18 U.S.C. § 554. *Id.* at 1, 5.

## II.    Procedural Background

On September 18, 2019, a grand jury returned a 24-count indictment against Petitioner, charging him with one count of Unlawful Dealing in Firearms in violation of 18 U.S.C. 18 U.S.C. § 922(a)(1)(A), twelve counts of False Statements in Acquisition of Firearms in violation of 18 U.S.C. § 924(a)(1)(A), and eleven counts of Transportation of Goods Intended to be Smuggled in violation of 18 U.S.C. § 554(a). (CR Doc. 19); (CR Doc. 20). On November 13, 2019, the grand jury returned a  modified superceding indictment, which still contained all 24 of the charges in the original indictment. (CR Doc. 37); (CR Doc. 38).

In the lead-up to his trial, Petitioner filed only one pretrial motion: a *Motion in Limine*, (CR Doc. 32), in which he sought to preclude the Government from introducing at trial the "inculpatory statements" he made in Officer Rickards's vehicle, absent other competent, corroborating proof of the crimes. *Id.* at 1-2. The Court denied the motion. (CR Doc. 67).

On December 4, 2019, after a three-day trial, the jury found Petitioner guilty on all 24 counts charged in the superceding indictment. (CR Doc. 64); (CR Doc. 65). On December 17, 2019, Petitioner moved for a new trial, contending the Government's closing argument was improper, the Government's expert witness withheld evidence, and the Court should have "explain[ed] the problems as laid out by our Supreme Court and as described in Defendant's proposed jury instruction number 5" when it admitted Petitioner's out-of-court statements. (CR Doc. 69 at 1). On March 31, 2020, the Court denied the motion for a new trial. (CR Doc. 77).

On October 13, 2020, the Court sentenced Petitioner to 60 months of imprisonment as to counts 1 through 12 and 24, and 78 months of imprisonment as to counts 13 through 23, to run concurrently, followed by a two-year term of supervised release. (CR Doc. 86). Following his sentencing, Petitioner filed two *pro se* motions seeking relief from his sentence, which the Court denied. *See* (CR Docs. 89-91). Petitioner did not file a direct appeal.

On September 29, 2021, Petitioner timely filed the instant § 2255 Motion, in which he asks the Court to vacate his sentence.[1] (CV Doc. 1); (CR Doc. 87). Petitioner

---

[1] Generally, motions for a writ of habeas corpus by a prisoner in federal custody must be filed within one year after the petitioner's underlying conviction becomes final. *See* 28 U.S.C. § 2255(f). Petitioner filed his § 2255 Motion less than one year after the Court imposed his

raises the following three grounds for relief, all premised on ineffective assistance of counsel: (1) counsel failed to seek suppression of the statements Petitioner made during his March 22, 2019 interview at MMJ's Pawn Shop; (2) counsel failed to file a notice of appeal or to meaningfully consult with Petitioner regarding an appeal; and (3) counsel committed a number of other errors during the trial itself. (CV Doc. 1 at 4-7).

## III.     Standard of Review Under 28 U.S.C. § 2255

A prisoner in federal custody who "claim[s] the right to be released" may challenge the legality of their conviction or sentence under 28 U.S.C. § 2255 if: (1) their sentence was imposed in violation of the United States Constitution or federal law; (2) the sentencing court had no jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized sentence; or (4) the sentence is otherwise subject to collateral review. 28 U.S.C. § 2255(a); *U.S. v. Nelson*, 465 F.3d 1145, 1148 (10th Cir. 2006). Relief is available under § 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *U.S. v. Addonizio*, 442 U.S. 178, 185 (1979).

The Court must "presume[] that the proceedings leading to the conviction were correct . . . and the burden is on the petitioner to demonstrate" otherwise. *Klein v. U.S.*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *U.S. v. Morgan*, 346 U.S. 502, 512 (1954)). When evaluating the pleadings of a party proceeding *pro se*, the Court must construe the pleadings liberally and should hold the party to a less stringent standard than it would a represented party. *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991). The

---

sentence, and thus the § 2255 Motion is timely. Notably, Respondent does not challenge its timeliness.

Court is not required, however, to assume the role of advocate for the *pro se* litigant. *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993).

## IV.    Discussion

In his § 2255 Motion, Petitioner raises ineffective assistance of counsel claims, which are governed by the Sixth Amendment of the U.S. Constitution. *See* (CV Doc. 1 at 4-7). That is, the Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel at trial. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Id.* at 686. Accordingly, the Supreme Court in *Strickland* devised a two-step inquiry to determine whether a lawyer's performance deprived a criminal defendant of his Sixth Amendment right to assistance of counsel. *Id.* at 686-87. To establish an ineffective assistance claim, the prisoner must demonstrate that "(1) 'counsel's performance was deficient' and (2) 'the deficient performance prejudiced the defense.'" *Crawley v. Dinwiddle*, 584 F.3d 916, 922 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 684).

Under the first prong, *Strickland* demands the petitioner establish that his counsel's "representation fell below an objective standard of reasonableness" such that "counsel's errors were so serious as to deprive the [petitioner] of a fair [criminal] trial." *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (quoting *Strickland*, 466 U.S. at 687)). The Court must give "considerable deference to an attorney's strategic decisions" and "recognize that counsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

The Court need not address whether counsel's performance was deficient, however, if the petitioner fails to prove actual prejudice. *See Neill v. Gibson*, 278 F.3d 1044, 1055 (10th Cir. 2001) (citing *Smith v. Robbins*, 528 U.S. 259, n.14 (2000) for the proposition that the "court may consider *Strickland*'s prejudice component without first addressing adequacy of counsel's performance"). To establish prejudice, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 690. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Moreover, when evaluating an ineffective assistance of counsel claim under § 2254(d)(1), [a federal court's] review is 'doubly deferential.'" *Crawley*, 584 F.3d at 922 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

In applying the two-part *Strickland* test, the Court may address the performance and prejudice components in any order. *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005). The Court thus need not address both prongs of the standard if the petitioner makes an insufficient showing on one of the prongs. *Strickland*, 466 U.S. at 697.

**A.**   **Failure to Challenge the Constitutionality of the March 22, 2019 Interview**

The Court will first consider Petitioner's claim that his attorney rendered ineffective assistance by failing to challenge the constitutionality of the March 22, 2019 interview at MMJ's Pawn Shop. (Doc. 1 at 5). Petitioner argues the interview violated his Fifth Amendment rights, which the Court reads to be an argument that the interview was custodial and thus required *Miranda* warnings prior to any questioning. *Id.* Respondent

7

contends Petitioner's attorney did in fact challenge the admission at trial of the statements Petitioner made during the interview, namely when he filed a motion *in limine* to exclude the statements absent otherwise corroborating evidence that Petitioner had committed the crimes. (Doc. 8 at 11-12). Respondent states Petitioner's attorney also submitted a proposed jury instruction, which the Court accepted, instructing the jury to consider factors such as voluntariness in weighing the reliability and credibility of the statements Petitioner was alleged to have made during the interview. *Id.* at 12-13.

Respondent contends, in any event, the interview required no *Miranda* warnings, and was thus constitutionally sound, because Petitioner "was not under any sort of formal arrest at the time of his interview." *Id.* at 16. In explaining why the interview was "non-custodial," Respondents state the ATF agents told Petitioner that "he was not under arrest[,]" that "they were sitting in the agent's car for privacy purposes[,]" and that "he was not being charged with any crimes," and Petitioner indicated he understood. *Id.* Respondents state the ATF agents "did not physically lay hands on" Petitioner or "display their weapons[,]" but rather they conducted the interview in a "polite" and "respectful manner." Respondents also state the interview "was not prolonged and lasted only 30 minutes and 31 seconds." *Id.*

i. Miranda *Standard*

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The U.S. Supreme Court has recognized that such pressures often attend interactions with the police—"pressures 'which work to undermine the individual's will to resist and to compel

him to speak where he would not otherwise do so freely.'" *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010) (quoting *Miranda v. Arizona*, 384 U.S. 436, 456-57, 467 (1966)). As such, in *Miranda v. Arizona*, the Supreme Court announced "a set of prophylactic measures to protect a suspect's Fifth Amendment right from the 'inherently compelling pressures' of custodial interrogation.'" *Id.* at 103 (quoting *Miranda*, 384 U.S. at 467). Upon placing a person in custody, "police officers must warn [the] suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney." *Id.* at 103-04 (quoting *Miranda*, 384 U.S. at 467). The failure to warn a person of their *Miranda* rights renders the person's subsequent statements inadmissible at trial. *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984).

Not every interaction a person has with the police, however, requires *Miranda* warnings, but rather only those interactions where "police interrogate a suspect who is *in custody*." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (emphasis added). A person is in custody when "there is a 'formal arrest,'" *California v. Beheler*, 463 U.S. 1121 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)), or when the person's "freedom of action is curtailed to a degree associated with formal arrest," *Berkemer*, 468 U.S. at 440 (internal citation and quotation marks omitted).

To determine whether a person was in custody, the Court should consider "the circumstances surrounding the interrogation" and "if, given those circumstances[,] . . . a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011) (citation omitted). In making this determination, the Court must consider the totality of the circumstances. *Thompson v. Keohane*, 516 U.S. 99 (1995); *see also Stansbury v.*

*California*, 511 U.S. 318, 322, 325 (1994) (*per curiam*). The analysis "is measured objectively, the proper inquiry being whether a 'reasonable person in the suspect's position would have understood his situation as the functional equivalent of formal arrest.'" *U.S. v. Hudson*, 210 F.3d 1184, 1190 (10th Cir. 2000) (quoting *Berkemer*, 468 U.S. at 442).

The Tenth Circuit has instructed district courts to consider the following non-exhaustive factors in assessing whether a custodial interrogation took place: (1) whether the suspect is informed that they may end the interview at will or that they are not required to answer questions; (2) whether the nature of the interview is likely to create a coercive environment from which a suspect would not feel free to leave, such as where there is prolonged accusatory questioning; and (3) whether the police dominate the encounter with the suspect. *See U.S. v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008) (quoting *U.S. v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993).

ii.     <u>Whether the Interview Violated Petitioner's *Miranda* Rights</u>

Here, as a threshold matter, Officer Rickards's March 22, 2019 interview of Petitioner was an interrogation. *See Innis*, 446 U.S. at 301 (stating that any questioning by law-enforcement officers "reasonably likely to elicit an incriminating response" constitutes an interrogation). During the interview Officer Rickards asked Petitioner many questions about Petitioner's firearms purchases, his transportation across the US-Mexico border with those firearms, and whether he sold those firearms in Mexico. *See* (CV Doc. 8-3 at 6-19). Faced with these questions, Petitioner admitted to transporting firearms into Mexico. *Id.* Thus, the Court finds the interview constituted an interrogation.

Turning to whether the interrogation was custodial, first, the Court notes Officer Rickards asked Petitioner to come to his vehicle to answer questions as opposed to demanding such. (CR Doc. 1 at 4). On four separate occasions during the interview, Officer Rickards assured Petitioner he was not under arrest. (CV Doc. 8-3 at 1, 20, 21). He explained to Petitioner that he "wanted to sit [in the car] for privacy because [he] didn't want everyone listening to [them] talk." *Id.* at 2, 20. Officer Rickards told Petitioner that he was not being charged with any crimes, *id.* at 1, 20, and that he "didn't have to talk" to Officer Rickards, *id.* at 20. Toward the end of the interview, Officer Rickards told Petitioner he "would like to stay in contact" with Petitioner, and that he would call Petitioner, suggesting Petitioner was free to leave. *Id.* As such, this first factor cuts against a finding that Petitioner was in custody. *See*, *e.g.*, *U.S. v. Begay*, 310 F. Supp. 3d 1318, 1358 (finding the first factor weighed against a finding of custody where suspect was informed he was not under arrest, that he could stop the interview and not answer questions, and that he was free to leave).

Second, the interview lasted only approximately thirty minutes. *Cf.*, *e.g.*, *U.S. v. Zar*, 790 F.3d 1036, 1048 (10th Cir. 2015) (finding no custody despite three-hour interview at suspect's kitchen table); *U.S. v. Lamy*, 521 F.3d 1257, 1263 (10th Cir. 2008) (finding no custody where suspect was interviewed for one hour inside their home); *U.S. v. Chee*, 514 F.3d 1106, 1114 (10th Cir. 2008) (finding no custody where interview lasted less than one hour). During that time, the questioning was not accusatory or badgering. Rather, from the Court's reading of the transcript, the nature of Officer Rickards's questioning seemed casual and primarily designed to appeal to Petitioner's sense of honesty. *See* (CV Doc. 8-3 at 15 ("We have a good thing going

11

here with honesty . . . I don't want you [to] think I'm here to judge you.")). The second factor thus cuts against a finding that the interrogation was custodial.

In assessing the third factor, whether the police dominated the encounter, courts consider the following additional factors: (1) separating the suspect from others who could lend moral support; (2) isolating the suspect in nonpublic questioning rooms; (3) the threatening presence of multiple officers; (4) displaying of weapons by an officer; (5) physical contact with the suspect; and (6) use of language or vocal tones which suggest that compliance with an officer's request is compulsory. *See Jones*, 523 F.3d at 1240.

The first three of these additional factors weigh in favor of police domination. The interview took place in what could be considered a coercive environment—the inside of a law enforcement vehicle, surrounded only by law enforcement officers. At Officer Rickards's request, Petitioner sat in the front passenger seat of Officer Rickards's "government-assigned vehicle" in the parking lot at MMJ's Pawn Shop. (CR Doc. 1 at 4). Officer Rickards sat in the driver's seat, and Agent Dilello sat in the backseat along with the Las Cruces police officer who provided translation. *Id.* In conducting the interview inside his vehicle, Officer Rickards separated Petitioner from his wife, who remained outside in the parking lot, he isolated Petitioner inside the privacy of his duty vehicle, and he placed Petitioner in the presence of multiple officers.

To be sure, the question of whether these first three factors support a finding of police domination is a close one. In two cases presenting a similar set of facts, courts in this District found police domination in one and none in the other. In the former, *U.S. v. Begay*, 310 F. Supp. 3d 1318, 1359 (D.N.M. 2018), two police officers took the suspect, alone, into their Suburban for questioning. *Id.* The Court found police domination

because the officers "separated [the suspect] from others and isolated him in a nonpublic questioning room, *i.e.*, their Suburban[,] . . . [with] multiple officers . . . inside the vehicle[,]" one of whom displayed his firearm. *Id.* In the latter case, *U.S. v. Romero*, 743 F. Supp. 2d 1281, 1334 (D.N.M. 2010), the suspect was placed in the front seat of a police vehicle "with both front windows rolled down[,]" where he "could be heard by those outside[.]" There, the Court found no police domination because the suspect " was not in a non-public questioning room[,]" and offcers neither displayed their weapons nor touched the suspect. *Id.* at 1334-35.

In any event, factors four, five, and six cut against police domination here. Nothing in the record indicates that Officer Rickards, Agent Dilello, or the Las Cruces police officer ever displayed their weapons during the interview; they only ever displayed their badges at the outset of their encounter with Petitioner. (CR Doc. 1 at 4). Nothing in the record indicates any of the officers had any physical contact with Petitioner. And, finally, nothing in the record suggests Officer Rickards or Agent Dilello used any language or vocal tone which would suggest that compliance with their interview request was compulsory. As discussed above, the nature of the questioning was casual and conversational. *See generally* (CV Doc. 8-3 at 6-15).

Accordingly, the Court finds, given the totality of the circumstances, that Petitioner's interview with Officer Rickards and Agent Dilello was not a custodial interrogation, and thus Officer Rickards's failure to warn Petitioner of his *Miranda* rights was not a constitutional violation.

iii.     *Whether Counsel Rendered Ineffective Assistance by Failing to Challenge
         the Constitutionality of the Interview*

Now, the Court will address the direct issue before it: the decision by Petitioner's

attorney not to challenge the admission of the statements Petitioner made during the

March 22, 2019 interview. The Court agrees with Petitioner that his attorney did not

challenge the admissibility of his statements on Sixth Amendment *Miranda* grounds, but

rather only on the ground that they were inadmissible unless accompanied by other

competent corroborating evidence. *See* (CR Doc. 32). However, the Court disagrees

with Petitioner that his attorney's decision not to challenge the admissibility of the

statements on *Miranda* grounds was prejudicial.

For the reasons explained above, any such challenge to the admissibility of

Petitioner's statements was likely doomed to failure. Even had his attorney decided to

pursue the challenge, the statements likely would nevertheless have been admissibile.

Thus, a challenge by his attorney to the admission of Petitioner's statements on

*Miranda* grounds likely would not have altered the outcome of the trial. *See Strickland*,

466 U.S. at 690 (to establish prejudice, the petitioner must show "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the [trial] would

have been different"). As such, this particular ineffective assistance of counsel claim

fails under *Strickland*'s second prong—actual prejudice. *See Neill v. Gibson*, 278 F.3d

1044, 1055 (10th Cir. 2001) (citing *Smith v. Robbins*, 528 U.S. 259, n.14 (2000) (the

"court may consider *Strickland*'s prejudice component without first addressing adequacy

of counsel's performance"). Therefore, trial counsel was not ineffective in deciding not to

seek suppression of Petitioner's statements on the basis of a Sixth Amendment *Miranda*

violation.

**B.**   **Failure to File a Notice of Appeal**

Next, Petitioner contends his attorney rendered ineffective assistance by failing to file a notice of appeal despite Petitoner's request that his attorney do so. (CV Doc. 1 at 4). Respondent disputes Petitioner's contention that he requested his attorney file a notice of appeal, and Respondent offers Petitioner's "waiver of appeal" as evidence to the contrary. (CV Doc. 8 at 8). Respondent further contends Petitioner's attorney "averred that he met with [Petitioner] and his family several times" to confer about the filing of an appeal. *Id.*

If an attorney disregards specific instructions from his client to file a notice of appeal, he "acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).The disregard of instructions to file a notice of appeal is also "presumptively prejudicial." *U.S. v. Snitz*, F.3d 1154, 1155-56 (10th Cir. 2003). That is, a petitioner who demonstrates that his attorney was ineffective by failing to file a timely notice of appeal need not show that the appeal was likely to succeed. *U.S. v. Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007). The first question then is whether the attorney failed to follow his client's "express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 478. "If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.*

Here, Petitioner states that "at sentencing" he asked his attorney to file a notice of appeal, and that his attorney told him "not to worry, because he would file a Notice of Appeal within the time limits." (CV Doc. 1 at 4). However, the day after he was sentenced, Petitioner signed a documents that reads:

> I acknowledge that I have fourteen days after my Sentencing to file my appeal in this case 2:19-CR-03240-001KG, but I decided not to appeal the verdict or Sentencing in this matter. I make this decision after consultation with my Attorney George Harrison in Spanish with the Interpreter.

(CV Doc. 8-1 at 1). Notably, the document states Petitioner arrived at the decision after consulting with his attorney. *Id.* Petitioner admits as much in his Motion, stating that "prior to and after sentencing," he and his attorney "discussed the advantages and disadvantages of appealing his sentence." (CV Doc. 4). And Petitioner's attorney, for his own part, stated in an email to Respondent's counsel that he "met with [Petitioner] several times as well as his family." (CV Doc. 8-2 at 1).

To date, Petitioner has not addressed this signed waiver—*e.g.*, to dispute its authenticity or to provide context for it—despite the Court giving him ample time to reply to Respondent's Response. *See* (CV Doc. 10). Also notably, Petitioner states in the waiver that it was translated to him in Spanish and that he understood what he was signing. (CV Doc. 8-1 at 1).

Given the record, the Court cannot find that Petitioner instructed his attorney to file a notice of appeal. Instead, it appears Petitioner's attorney adequately consulted with Petitioner regarding an appeal, and after that consultation, Petitioner decided he did not wish to pursue a direct appeal of his conviction or sentence. Therefore, the Court finds Petitioner has failed to show trial counsel was ineffective for not filing a notice of appeal.

### C.   Claims of Error at Trial

The Court reads Petitioner's final claim broadly to argue that his attorney rendered ineffective assistance by: (1) failing to challenge the introduction of three trial exhibits concerning Petitioner's border crossings; (2) failing to seek exclusion of

testimony by the Government's witness ATF Agent Patrick Strait; (3) failing to raise a *Brady* violation for the Government's nondisclosure of exculpatory evidence; and (4) failing to move to strike the Government's closing argument as improper. (CV Doc. 1 at 4-7, 28-31); *see also Hall*, 935 F.3d at 1110 (requiring courts to construe *pro se* pleadings liberally). The Court will address these arguments separately.

      i.    <u>The Trial Exhibits</u>

As to the three trial exhibits, Petitioner contends his attorney failed to "timely and properly challeng[e] the introduction of exhibit 94B, 94C, [and] 94F . . . during trial." (CV Doc. 1 at 28). According to Respondent, Petitioner's attorney did in fact object to the admission of Exhibits 94C and 94F, but the trial court overruled the objection and admitted the evidence "as properly certified business records." (CV Doc. 8 at 19). Respondent concedes that Petitioner's attorney did not object to the admission of Exhibit 94B, but argues the trial court properly admitted it into evidence as a certified business record. *Id.*

Respondent is correct that Petitioner's attorney objected to the admission of Exhibits 94C and 94F following his *voir dire* of Agent Strait, and, as such, Petitioner's argument that his attorney failed to do so is meritless. *See* (CR Doc. 70 at 30 ("Mr. Harrison: Okay. So I would renew my objections to 94C, D, E, and F . . . So, yeah, I would object to anything other than 94B.")); *see also id.* at 41 ("The Court: And so as to 94A in addition to what's already been admitted as B, 94C, D, E, and F, I'm admitting as properly certified business records.").

The parties agree Petitioner's attorney did not object to the admission of Exhibit 94B into evidence at trial. However, it appears to the Court that this exhibit was

admissible as a properly certified business record under Federal Rules of Evidence 803(6) (business record exception) and 803(8) (public records exception). That is, the exhibit is a certified record from the U.S. Customs and Border Protection (the "CBP"), containing a log of Petitioner's personal history of crossing the US-Mexico border. *See* (CV Doc. 8-4).

Courts in this circuit have found that border crossing logs are admissible under Rules 803(6) and 803(8) as exceptions to the hearsay rule, because they are public records prepared as part of routine, objective observations, made as part of the everyday function of the CPB. *See*, *e.g.*, *U.S. v. Figueroa-Rivera*, 16-cr-2367 WJ, 2017 WL 3601341, at *2 (D.N.M. Mar. 8, 2017) (finding report of defendant's entries into the U.S. from Mexico admissible under Rules 803(6) and 803(8)). Additionally, the U.S. Supreme Court has found evidence admitted under these rules to be admissible because it is not testimonial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). Thus, the decision by Petitioner's attorney not to object to Exhibit 94B did not render his performance deficient.

      *ii.*    <u>The Testimony of Agent Patrick Strait</u>

Next, Petitioner contends his attorney should have sought to exclude the testimony of Agent Strait, who Petitioner alleges was called by the Government as an expert witness. (CV Doc. 1 at 7, 28). To the extent Petitioner is arguing the Government failed to qualify Agent Strait as an expert, the Court finds the claim meritless since Agent Strait testified not as an expert witness but rather as a fact witness—to wit, as a case agent for some of the charges. *See generally* (CR Doc. 70 at 3-67). Therefore,

Petitioner's attorney did not render ineffective assistance by not seeking exclusion of Agent Strait's testimony.

### iii.    The Government's Alleged Failure to Disclose Exculpatory Evidence

Petitioner's next argument concerns the Government's alleged failure to disclose evidence. Petitioner contends that during Agent Strait's testimony, it became "clear that the [G]overnment has data that could have been helpful and exculpatory [to Petitioner] that was not disclosed." (CV Doc. 1 at 30). In particular, Petitioner refers to Agent Strait's testimony that the CBP's records of border crossing related to four vehicles associated with Petitioner included a hyperlink which, if opened, would show the identity of the passengers in the four vehicles. *Id.*; *see also* (CR Doc. 77 at 3-4); (CR Doc. 70). Petitioner contends the Government failed to disclose the hyperlink, and he claims his attorney "could have moved for a more intense investigation regarding the evidence available to [Petitioner]." (CV Doc. 1 at 30).

Petitioner does not explain exactly how his attorney could have more intensely investigated the hyperlink evidence or otherwise argued a *Brady* violation.[2] To the contrary, Petitioner acknowledges his attorney objected to the Government's failure to disclose the hyperlink prior to trial. *Id.* Indeed, in response to Agent Strait's testimony regarding the hyperlink, Petitioner's attorney objected as follows:

> Your Honor, I've never seen what he clicks on there to see who's in the vehicle. The fact that a vehicle crossed that he had sometimes been in, I didn't think was going to be relevant. If he's going to say it's relevant because of information he has that they've never disclosed, I think this far

---

[2] Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To prove a violation, a defendant must show "(1) the government suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material." *U.S. v. Wells*, 873 F.3d 1241, 1259 (10th Cir. 2017).

into the trial is too late to be trying to introduce that evidence. I've got to
have some chance to deal with it, because from what I asked him in voir
dire, he doesn't even know when there's only one person in the car if it's
the defendant. And he doesn't know for any of these others. The only
crossings he can testify to for sure are 94B.

(CR Doc. 70 at 38-39). The Court can find no deficiency in this performance. *See*

*Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (for counsel's performance to be

considered constitutionally ineffective, it must have been "completely unreasonable, not

merely wrong") (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)). The

Court thus finds Petitioner failed to show ineffective assistance of counsel on this point.

    *iv.*    <u>*The Government's Closing Argument*</u>

As concerns the issue of the Government's closing argument at trial, Petitioner

contends that the Government mischaracterized Agent Strait's testimony and relied on

misleading demonstrative exhibits, and that Petitioner's attorney failed to object to this

conduct. (CV Doc. 1 at 7, 29-30) Respondent does not address this argument except to

state generally that "nearly all of the argument set forth in Ground Three is taken

verbatim from the motion for new trial." (CV Doc. 8 at 18).

In its first closing argument, the Government displayed demonstrative slides,

which compared the dates Petitioner purchased firearms with the dates of his travel

across the US-Mexico border. *See* (CR Doc. 77 at 2); *see also* (CR Doc. 71 at 20-47).

The Government relied on these slides to illustrate the evidence it had presented during

the trial of Petitioner's smuggling activities. (CR Doc. 71 at 20). For instance, the first

slide showed (1) the date on which Petitioner first selected one of the subject firearms

and signed the requisite firearm purchase form, (2) the date on which Petitioner

physically obtained the firearm, and (3) the date on which Petitioner crossed the US-

Mexico border. *Id.*

Agent Strait testified to these facts, and the facts were contained in Exhibits 94B through 94F, all of which had been admitted into evidence. There appears to have been no prosecutorial misconduct from the Government's presentation of these demonstrative slides, and thus the decision by Petitioner's attorney not to object to them was not deficient. *See U.S. v. Fleming*, 667 F.3d 1098, 1103 (10th Cir. 2011) (requiring the court, even when analyzing prosecutorial misconduct, to first determine whether the prosecutor's statements were improper, and if so, whether the statements were harmless). Moreover, Petitioner has failed to show a reasonable probability that, but for his attorney's failure to object, the outcome of the case would have been different because, notwithstanding the slides, the exhibits and the testimony by Agent Strait were already in evidence. *See Strickland*, 466 U.S. at 690. Therefore, Petitioner has failed to show his attorney rendered ineffective assistance concerning his performance at trial.

In sum, the Court finds Petitioner has failed to meet his burden on any of the three claims in his Motion. Accordingly, the Court will **RECOMMEND** that Petitioner's Motion be **DENIED**.

## V.    Evidentiary Hearing

The Court must conduct an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). In determining whether such a hearing is warranted, the Court must review the answer and any transcripts of prior proceedings. *See* Rule 8 of the Rules Governing Section 2255 Proceedings. "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will

encompass and how it will support a movant's claim." *U.S. v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004).

For the reasons discussed above, the record in this matter is sufficient to dispose of each of Petitioner's claims of ineffective assistance of counsel without a hearing. Therefore, the Court will **RECOMMEND** that an evidentiary hearing not be held.

## VI.    Certificate of Appealability

In order to appeal "a final order in a proceeding under section 2255," a petitioner must first obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Courts may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). For the reasons discussed above, however, the Court finds Petitioner has not made a substantial showing that he was denied his Sixth Amendment right to effective assistance of counsel. Therefore, the Court will **RECOMMEND** that a certificate of appealability not be issued.

## VII.    Conclusion

For the foregoing reasons, the undersigned finds that Petitioner has not established that his sentence was imposed in violation of the United States Constitution or federal law. 28 U.S.C. § 2255(a); *Nelson*, 465 F.3d at 1148. The undersigned further finds that an evidentiary hearing is not warranted, and that Petitioner should not be issued a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

The undersigned therefore **RECOMMENDS** that Petitioner's *Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, (CV Doc. 1), be **DENIED**; and that this case be **DISMISSED WITH PREJUDICE**.

The undersigned further **RECOMMENDS** that the Court **DECLINE** to conduct an evidentiary hearing in this matter.

The undersigned finally **RECOMMENDS** that the Court **DECLINE** to issue a certificate of appealability, because Petitioner has failed to make a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c).

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE